UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Lakeside Development, LLC,<br><br><br>Debtor. | C/A No. 11-05211-dd<br><br>Chapter 7<br><br>ORDER ON MOTION FOR RELIEF<br>FROM STAY |

    This matter is before the Court on a Motion for Relief from Stay ("Motion") filed by Bank of the Ozarks ("Bank") on November 28, 2011. Michelle L. Vieira, the chapter 7 trustee ("Trustee"), objected to the Motion on November 30, 2011. A hearing was held February 16, 2012. At the conclusion of the hearing, the Court took the matter under advisement. The Court now issues the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

    Lakeside Development, LLC ("Debtor") filed a chapter 7 petition on August 23, 2011. Debtor is a limited liability company with no current business operations. On its Schedule A, Debtor lists two pieces of real property: a vacant lot in Bluffton, South Carolina valued at $5,000, owned free and clear, and undeveloped real property consisting of approximately 100 acres divided into three separate tracts, all of which are located along a four-lane parkway. Schedule A indicates these tracts were being developed under the name Brightwater at Hampton Lake and lists the total value of the tracts as $13,100,000, pursuant to a June 2010 appraisal.

    Debtor's Schedule D lists a lien on the Brightwater property held by Bank in the amount of $7,282,824.75. The payoff on the loan, as provided by Bank, is $6,139,346.21. Bank's Motion states that its most recent appraisal, dated October 25, 2011, valued the property at $4,925,000.00. Bank states in its Motion that the tax value of the property is $2,466,844.00.

Bank's lien on the property arose as a result of the execution and delivery of a note and mortgage from Debtor to Woodlands Bank in February 2008 in exchange for a loan in the amount of $7,150,000. The loan was for the purpose of purchasing and developing the Brightwater property. Because the loan Woodlands Bank planned to extend to Debtor exceeded Woodlands Bank's lending limit, Woodlands Bank sought to involve a participating bank. First South Bank ("First South") participated in the loan; the extent of First South's participation is 61.7918 percent. However, Woodlands Bank, with a minority financial interest, was the lead bank on the loan. In July 2010, the assets of Woodlands Bank were purchased by Bank after Woodlands Bank was taken into receivership by the FDIC. Bank acquired Debtor's loan as part of the asset purchase.

William Lyerly, a vice president of First South, testified at the hearing. Mr. Lyerly indicated that First South prefers that Trustee market and sell the property instead of Bank being allowed to foreclose. Mr. Lyerly testified that if Bank were granted relief from stay, because it is the lead bank on the loan, Bank would direct the foreclosure process and have the authority to bid on and perhaps purchase the property at any foreclosure sale, preferring its interests to those of First South. Mr. Lyerly indicated that, although it is extremely unusual for a participating bank to appear and object to a lead bank's actions, First South strongly opposes Bank's Motion for Relief from Stay.

Hugh Morrison, an appraiser used by Bank, was qualified as an expert on the value of similar real estate and testified at the hearing regarding the October 25 appraisal he prepared for Bank. Mr. Morrison testified that he used the sales comparison approach in arriving at the value of the property, which he stated is the best approach for valuing raw land. Mr. Morrison determined that a reasonable marketing time for the properties would be twelve months or less.

Mr. Morrison first discussed Tract A, which is an approximately 3.86 acre parcel of undeveloped land zoned for commercial and multi-family use.[1]  Mr. Morrison stated that due to wetlands and other encumbrances on the property, Tract A only contains 1.91 acres of useable area, of which only 0.30 acres is suitable for purposes other than parking, as a power line easement encumbers approximately 1.61 acres of Tract A.  Mr. Morrison offered his opinion that the value of Tract A is $208,000.  Tract B contains 22.76 acres and is also zoned for commercial and multi-family use.  Mr. Morrison testified that Tract B contains eight acres of developable area.  Mr. Morrison offered his opinion that the value of Tract B is $958,000.  Finally, Tract C, a 72.16 acre parcel zoned for multi-family use, contains 50.49 acres of developable area.  Mr. Morrison offered his opinion that the value of Tract C is $5,400,000.

The total value of the three tracts, in Mr. Morrison's opinion, is $6,566,000; however, Mr. Morrison also provided the opinion that the property should be valued based upon a hypothetical bulk sale to a single purchaser.  Mr. Morrison spoke with several realtors to determine a discount factor for such a sale and arrived at a discount of 25% and a final valuation of $4,925,000.

Jackson Cobb, a licensed real estate broker frequently employed to sell real property by chapter 7 trustees in this District, was qualified as an expert witness. Mr. Cobb offered his opinion that the value of the three parcels is $9,702,750.  Mr. Cobb based his opinion in part on two existing offers for portions of Tract C.  The first potential purchaser seeks to purchase 6.6 acres of Tract C to build an assisted living facility, at a price of $675,000.  The second purchaser seeks to purchase 12.31 acres of Tract C for a price of $600,000.  Mr. Cobb also relied on various development models for multi-family units and suggested a range from $8,000 to

---

[1] The three tracts of land comprising the Brightwater property were divided and named differently by each party's appraiser.  For purposes of simplicity, the references to Tract A, Tract B, and Tract C refer to Mr. Morrison's naming of the three tracts.

$15,000 per unit, yielding a total value for the 600 multi-family units, once developed, of $6,804,000.

Mr. Cobb emphasized the uniqueness of the Brightwater property and the effect that it has on the parcels' values. Mr. Cobb discussed the "entitlements" which the Town of Bluffton has granted the property, allowing the construction of 600 units of multi-family housing, 100,000 square feet of retail or commercial use, and residential care use which will not reduce the 600 multi-family unit entitlement. Mr. Cobb stated that the granting of these entitlements is very unusual and that there is likely no other piece of property in Bluffton with these entitlements. Mr. Cobb stressed the fact that the property is a lakefront property with almost half a mile of lake frontage and numerous amenities, which in his opinion greatly add to the property's value.

Mr. Cobb emphasized that the tracts should not be sold in a bulk sale to a single purchaser but instead should be broadly marketed with the possibility of numerous separate sales, as this would dramatically increase the value of the property. Mr. Cobb testified that he believes he can market and sell the parcels in a reasonable amount of time for a total price of over nine million dollars.

## CONCLUSIONS OF LAW

Bank's Motion requests relief from stay under 11 U.S.C. § 362(d)(1) and (d)(2) but argues a basis for relief only under section 362(d)(2). The Motion and the evidence presented at the hearing relate solely to the value of the property and therefore go to section 362(d)(2). No cause for relief from stay under section 362(d)(1) was established.

Bank argues in its Motion that the value of the property is "significantly less" than the total amount owed to Bank on the petition date, and as a result, the first element of section 362(d)(2)

is satisfied. Because Debtor's case is a chapter 7 case, Bank states that the second element of section 362(d)(2) is satisfied as well.

Section 362(d) states:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
(2) with respect to a stay of an act against property under subsection (a) of this section, if –
  (A) the debtor does not have an equity in such property; and
  (B) such property is not necessary to an effective reorganization.

This is a chapter 7 case; as a result, no reorganization is being attempted. Thus, as the Bank states in its Motion, the second element of section 362(d)(2) is met. The only issue, then, is whether Debtor has equity in the property. On a request for relief from stay, the movant has the burden of proof on the issue of equity in the property, and the opposing party has the burden on all other issues. 11 U.S.C. § 362(g). Thus, in order to be entitled to relief from stay under section 362(d)(2), Bank must show that Debtor has no equity in the Brightwater property.

The parties presented conflicting evidence regarding the value of the property. Bank presented an appraisal which valued the property at $4,925,000, while Trustee presented a Broker's Price Opinion valuing the property at $9,702,750. The difference seems largely to hinge on whether the parcels are sold in a single transaction to one purchaser or whether the parcels are sold separately. When Mr. Morrison, the Bank's appraiser, valued the tracts separately, the total value of the property exceeded the payoff of the loan by over $400,000, although no consideration was given to the cost of sale. Mr. Cobb has obtained two offers to purchase portions of the property which together equal over a million dollars. The property is very unique due to its lakefront location, various entitlements, and numerous amenities. Both Mr.

Morrison and Mr. Cobb argued that it is difficult to find comparable properties to rely on in arriving at a value.

Trustee requests that Bank's Motion be denied so that she can have an opportunity to market and sell the property. A trustee in the commission of her duties is entitled to exercise reasonable business judgment. *See In re Derivium Capital, LLC*, 380 B.R. 392, 404 (Bankr. D.S.C. 2007) ("In determining whether to approve a sale proposed by a trustee under [section 363(b)(1)], courts generally apply a business judgment test. Although the Trustee's business judgment is to be given 'great judicial deference,' the Court must scrutinize whether the Trustee has fulfilled his duty to 'maximize the value obtained from a sale, particularly in liquidation cases.'" (internal citations omitted)). *See also In re Bi-Lo, LLC et al.,* No. 09-02140-hb, slip op., at 10 (Bankr. D.S.C. Aug. 12, 2009). An exercise of such business judgment includes disposition of property if the trustee determines that such disposition is in the best interest of the estate. *Bi-Lo*, at 10 ("In determining whether to authorize the use, sale or lease of estate property, courts generally apply a business judgment test."); *Derivium Capital*, 380 B.R. at 404.

It appears that the property can be sold for more than the total balance owed Bank if Trustee is given a sufficient amount of time and the property is sold in separate parcels. It is a proper exercise of Trustee's business judgment to market and sell the property where, as here, it appears that there is value for creditors other than the mortgage holders. The Court finds that the property has numerous unique attributes and that Trustee should have an opportunity to market and sell the property with an emphasis on maximizing the property's value through the sale of separate parcels. This determination is buttressed by the views of the participating bank in the very mortgage loan at issue, who urges the Court to allow Trustee an opportunity to market the property. The Court finds it significant, and in fact essential to the Court's decision regarding

relief from stay, that Mr. Lyerly, a representative from First South, a participating bank and secured creditor, appeared at the hearing on Bank's Motion in strong opposition. First South has a substantial stake in this matter, as the balance of its portion of the claim is $3,258,210.48 and is in fact greater than Bank's balance. First South expressed disagreement with Bank's attempt to obtain relief from stay and dissatisfaction of Bank's strategy throughout the course of this loan. First South strongly supported Trustee's plan to sell the tracts and indicated its desire that Trustee be allowed to do so, as Mr. Lyerly stated that First South believes the value of the property to be considerably higher than the Bank's appraisal shows. The fact that a secured creditor with a substantial claim supports Trustee's proposed actions and opposes Bank's request provides additional, significant support for denial of Bank's Motion. Bank has not met its burden of proving that there is no equity in the property, and Trustee should attempt to sell the property. Bank is not entitled to relief from stay under section 362(d)(2).

## CONCLUSION

For the reasons set forth above, Bank is not entitled to relief from stay under section 362(d)(1) or 362(d)(2). Bank's Motion is denied.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**02/24/2012**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 02/24/2012